JAMES FLOCKHART, doing business under the name and style of Maher & Flockhart,

*v.*

LOCAL NO. 40, INTERNATIONAL MOULDERS' UNION OF NORTH AMERICA, et al.

[Heard October 11th, 1917. Decided November 2d, 1917.]

1. A court of equity must act in the matter of contempt of its orders in such a manner as to make it understood that its orders cannot be ignored and the offender escape punishment.

2. Under the proofs in this case a sentence of imprisonment is necessary to vindicate the dignity of the court.

On proceedings to punish for contempt.

*Mr. Arthur F. Egner,* for the complainant.

*Mr. Henry Carless,* for the defendants.

LANE, V. C. (orally).

I adjudge Stevenson guilty of contempt. I believe the testimony of the several witnesses who have been produced on the part of complainants; they impressed me as being truthful, as endeavoring to tell everything they knew, and only what they knew. Their stories do not exactly agree. This indicates that there is not here what is commonly called a "frame-up." I would have had some doubts if all had testified to exactly the same state of facts.

Stevenson's story is supported by only one witness. The story itself bears inherent evidence of falsity. I do not think that there can be any question but that violence was committed during the month of August, much greater violence than has been testified to here. I think Stevenson was cognizant of all that

took place.   His attitude of mind is disclosed by the resolution
that he offered in Rochester, New York, at a meeting of the
International Moulders' Union, on September 19th, congratulat-
ing one of the members of the police board of the city of New-
ark (drawing particular attention to the fact that this gentle-
man was an official of another union) because he had used his
influence to secure withdrawal of police protection to the plant.
The explanation given by Stevenson that this resolution was
introduced by him because, as a citizen of the city of Newark,
he thought that the expense ought not to be incurred is ridic-
ulous.   The International Moulders' Union has nothing to do
with expenses incurred by the city of Newark.   There could
have been but one object, and that was to express pleasure that
police protection had been withdrawn so that the strikers might
continue to act as they saw fit.   There could have been no other
reason for it.   I cannot conceive how law abiding citizens can
object to the presence of sworn officers of the law who are pres-
ent to preserve peace.   There is no charge made that the police
were unfair to the strikers.

I will withhold consideration of the cases of McLaughlin and
Burns and the union itself.   Harry Stevenson will be adjudged
guilty of contempt, and the only question now is what punish-
ment I should impose upon him and Schum already adjudged
guilty.

I am sitting in a court of equity the province of which is to
determine rights between parties, not to punish crimes or put
anyone in jail; however, the law in this state is that this court
must act where adequate relief cannot be obtained from other
civil authorities and must protect the rights both of the owners
of property and of the strikers equally.   There is no doubt but
that the order of this court has been most contemptuously vio-
lated; there is no doubt but that Stevenson is the head and
front not only of the strike but of the events constituting the
violation of the order.   He assumed that he could in some way
or another avoid punishment for anything that he did which
he thought was necessary to be done in order that this strike
should be successful, including persistent violence, violence
which possibly did not go to actual injury to life or limb,

but insulting remarks, attempts by intimidation to prevent workers from exercising their inalienable right to work where they please and when they please. The union may have a perfect right to endeavor to persuade men by peaceful means to leave their employment. It has a right peacefully to attempt to persuade them to become members of the union. It may have a right in a lawful way to picket. No court would attempt to prevent it from exercising any single legal right it has. The law, however, is that this court will prevent it or its members from committing unlawful acts. Now it seems to me that I would be shirking my duty if I did not not only adjudge these men guilty of contempt but actually punish them. They must be made to understand, every citizen must be made to understand that the order of the court cannot be ignored and the offender hope by pleas for mercy to escape punishment. If I should yield to the request of counsel for the respondents the result would be—well, we might as well shut the doors of the court.

I have concluded that no adequate punishment could be meted out to these men other than terms of imprisonment. They must understand that they cannot disobey the law or disobey the orders of this court and escape with fines which may be paid either by them or by someone else. The punishment must be personal. The judgment of this court is that the respondent Stevenson be confined in the jail of the county of Essex for a period of forty days and thence until costs of this proceeding are paid; that the respondent Schum be confined in the Essex county jail for a period of twenty days. And I want to say now for the benefit of everybody who may be in this court room that the fact that I have imposed only forty days in one instance and twenty days in another is no indication of the punishment which may in future cases be meted out if the contempt is willfully contemptuous.